IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shahid L.A. Majid, *aka Arthur Moseley*, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Dr. Cassandra Means, *Regional Dir.*; )<br>Sherrisse Birch, *CCC*; DHE Francine )<br>Backman; Warden Randall Williams; Assoc. )<br>Warden Martell; SCDC; and IGB Sherman )<br>Anderson, )<br>)<br>Defendants. )<br>_____ ) | C/A No. 0:19-1937-MGL-PJG<br><br><br>**ORDER AND<br>REPORT AND RECOMMENDATION** |

The plaintiff, Shahid L.A. Majid, a self-represented state prisoner, filed this action alleging a violation of his constitutional rights. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion to dismiss or, in the alternative, for summary judgment. (ECF No. 50.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Majid of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 53.) Majid filed a response in opposition to the motion (ECF No. 74), as well as a motion for a preliminary injunction (ECF No. 66), and the defendants filed a reply (ECF No. 78).[1] Having reviewed the record presented and the applicable law, the court finds that the defendants' motion should be granted, and Majid's motion should be denied.

---

[1] Majid also filed a sur-reply. (ECF No. 83.) The Local Civil Rules make no provision for sur-replies. However, consideration of Majid's sur-reply would not change the court's recommendation on the defendants' motion.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Majid, to the extent they find support in the record. Majid's Complaint contains a litany of allegations, many of which are difficult to discern. However, the majority of his complaints appear to concern his mental health treatment—or alleged lack thereof—by certain defendants while housed in various South Carolina Department of Corrections ("SCDC") facilities. Majid also references a "fraudulent" mental health assessment being presented at a disciplinary hearing, his being forced to take unprescribed medication, and being denied a crank up radio. (See generally Compl., ECF No. 1.)

The court construed Majid's Complaint as only alleging claims pursuant to 42 U.S.C. § 1983 for deliberate indifference to serious medical needs in violation of the Eighth Amendment, and for retaliation. (Order, ECF No. 19 at 1.) No party challenged this construction of the claims. Majid seeks monetary relief and for all of his disciplinary charges to be expunged. (ECF No. 1 at 5-6.)

**DISCUSSION**

**A.     Applicable Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The court "may also consider documents

attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

Under Rule 56, summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex

Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment**

    **1.     Exhaustion of Administrative Remedies**

The defendants argue that Majid failed to exhaust his administrative remedies with regard to the majority of his claims.  A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a).  Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Generally, to satisfy this requirement, a plaintiff must avail himself of every level of available administrative review.  See Booth v. Churner, 532 U.S. 731 (2001); but see Ross v. Blake, 136 S. Ct. 1850 (2016) (describing limited circumstances where exhaustion may be excused).  Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective.  Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739).  Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v.

McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendant has the burden of establishing that a plaintiff failed to exhaust his administrative remedies. See Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017) (quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008)).

Pursuant to South Carolina Department of Corrections policy (see SCDC Policy GA-01.12 "Inmate Grievance System," ECF No. 50-5), an inmate seeking to complain of prison conditions generally must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, subject to certain exceptions not applicable here, review from the South Carolina Administrative Law Court ("ALC"), a state executive-branch tribunal, is generally part of the available administrative remedies an inmate must exhaust. S.C. Code Ann. § 1-23-500 ("There is created the South Carolina Administrative Law Court, which is an agency and court of record within the *executive* branch of the government of this State.") (emphasis added); see Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)); (SCDC Policy GA-01.12 "Inmate Grievance System" at § 13.9, ECF No. 50-5).

The law is clear that exhaustion is a prerequisite to suit and must be completed prior to filing an action. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 676-77 (4th Cir. 2005); see, e.g., Page v. Paduly, No. 9:09-cv-0952-RMG-BM, 2010 WL 4365644, at *1 (D.S.C. Oct. 28, 2010) (finding that a plaintiff failed to exhaust his administrative remedies where he either did not properly pursue a grievance concerning the issues raised in the case prior to filing the lawsuit, or

did not even file grievances until after the lawsuit had already commenced); Cabbagestalk v. Ozmint, C/A No. 9:06-3005-MBS, 2007 WL 2822927, at *1 (D.S.C. Sept. 27, 2007) (noting that the court must look to the time of filing—not the time the district court is rendering its decision—to determine if exhaustion has occurred); see also Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001) (rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) (holding a prisoner "may not exhaust administrative remedies during the pendency of the federal suit").

The defendants present evidence in the form of affidavit testimony from Sherman Anderson, Chief of the Inmate Grievance Branch, as well as a record of all grievances filed by Majid and copies of the grievances relevant to Majid's claims. (Anderson Aff., ECF No. 112-3 at 2-6; Grievances, ECF No. 112-3 at 7-66.)  Anderson testifies—and the record confirms—that of the multitude of Step 1 and Step 2 grievances filed by Majid, only one relates to the claims raised in this action and construed by the court.[2]  Specifically, Majid filed a Step 1 and Step 2 grievance with regard to his deliberate indifference claim that Defendants Birch and Means denied him access to unspecified mental health programs and instead referred him to a program for sexual predators.  (See Grievance No. LCI-0181-18, ECF Nos. 50-6 at 67-70.)  In response to the defendants' argument, Majid appears to argue that he was not able to fully exhaust his claims because he was on " grievance limitation" which prohibited him from filing any grievances.  In support, Majid provides correspondence from Defendant Anderson dated November 27, 2018 and

---

[2] It appears that Majid filed a Step 1 and Step 2 grievance regarding Defendant Birch allegedly falsifying a mental health statement for a disciplinary hearing. (See Grievance No. LCI-0086-18, ECF No. 1-1 at 5, 7.)  However, although this allegation is referenced in Majid's Complaint, such a claim was not construed by the court, and Majid filed no objections to the court's order.

May 14, 2019 informing Majid that he is on "Grievance Limitations" and therefore "will not be able to file grievances until you are notified in writing by [Anderson]." (ECF Nos. 75-1 at 13-14.) However, the claims raised in Majid's Complaint all occurred long before the periods of time during which Majid was placed on grievance limitations. Moreover, the record is clear that Majid had access to the grievance system during the applicable period of time as evidenced by Majid filing numerous grievances during the time period surrounding his claims. Accordingly, this argument does not avail Majid.

In summary, all of Majid's claims should be dismissed as a matter of law for failure to exhaust his administrative remedies, except for Majid's deliberate indifference claim raised against Defendants Birch and Means, which the court will address on the merits, below.

### 2.     **Eighth Amendment—Deliberate Indifference to Medical Needs**

In his Complaint, Majid summarily alleges that Defendants Means and Birch denied him access to unspecified mental health programs and that Defendant Means instead referred him to a program for sexual predators. (Compl., ECF No. 1 at 4.) The court construed this claim as alleging deliberate indifference to medical needs in violation of the Eighth Amendment.

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his claim under the Eighth Amendment, Majid must demonstrate: (1) objectively, the deprivation suffered or injury inflicted was "sufficiently serious," and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' "

Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.' " Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under the Eighth Amendment to the United States Constitution. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To satisfy the subjective prong of an Eighth Amendment claim, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Farmer, 511 U.S. at 834. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. However, because even a subjective standard may be proven through circumstantial evidence, "a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)). Therefore, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." Makdessi, 789 F.3d at 133 (quoting Farmer, 511 U.S. at 842).

Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d

848, 851 (4th Cir. 1990).  Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983.  See Estelle, 429 U.S. at 106.  While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice.  Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."  Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

In support of their motion for summary judgment, the defendants provide Majid's SCDC medical record summary.[3]  Majid's Complaint is vague as to the time period that he alleges he was denied access to mental health, but his grievances on this issue are dated in March and April of 2018.  Review of Majid's medical record summary reveals that Majid was seen repeatedly and consistently over the time period at issue by mental health counselors as well as by numerous doctors and nurses.  For example, the medical summary from January through May 2018 alone contains over fifty medical and mental health entries.  Of these entries, approximately a quarter of them pertain to Majid's mental health treatment.  Notably, Majid refused to speak to mental health counselors on multiple occasions during this period of time and also was not in full compliance with his prescribed medications.  Additionally, many of Majid's mental health summaries note that SCDC medical and mental health staff believed Majid on many occasions to be malingering.

---

[3] The defendants move to seal certain portions of Majid's medical records that they acknowledge contain federally protected health information.  (ECF No. 51.)  No one filed any response to the defendants' motion.  Accordingly, the defendants' motion to seal is granted without opposition filed.

In response, Majid appears to argue that he did not receive needed medical care for a variety of physical maladies.  Although the record before the court clearly belies such claims, to the extent Majid raises additional claims in his response in opposition that were not raised in his Complaint, such claims are not properly before the court.  See, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").

Turning to Majid's claim that he was denied mental health treatment, courts have recognized that "lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."  O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005); see also Nelson, 603 F.3d at 449 ("A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").  Here, the record indisputably shows that Majid had access to medical care, mental health treatment, and medication on a continual basis while housed within SCDC facilities during the relevant time period.  Moreover, Majid has provided no admissible evidence supporting a finding that he faced "a substantial risk of serious harm" from alleged denial

of care while housed within SCDC as required to establish the objective component of a deliberate indifference claim under the Eighth Amendment. Farmer, 511 U.S. at 837. Majid does not have a constitutional claim against the defendants merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Majid's claims allege negligence or medical malpractice, which are not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, based on the record presented in this case, no reasonable jury could find that the defendants were deliberately indifferent to Majid's medical needs. See Farmer, 511 U.S. at 837.

**C.     Majid's Motion for a Preliminary Injunction**

A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds by 559 U.S. 1089 (2010), reissued in part by 607 F.3d 355 (4th Cir. 2010), overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir.

1977).[4]  A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim.  Winter, 555 U.S. at 22; Real Truth, 575 F.3d at 345-46.  Similarly, he must make a clear showing that he is likely to be irreparably harmed absent injunctive relief.  Winter, 555 U.S. at 20-23; Real Truth, 575 F.3d at 347.  Only then may the court consider whether the balance of equities tips in the plaintiff's favor.  See Real Truth, 575 F.3d at 346-47.[5]  Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction.  Real Truth, 575 F.3d at 347 (quoting Winter, 555 U.S. at 24).

Majid first seeks injunctive relief regarding dental care.  As discussed above, this issue was not raised in Majid's Complaint.  Consequently, Majid's is not entitled to relief on this claim.  See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); Stewart v. U.S. I.N.S., 762 F.2d 193, 199 (2d Cir. 1985) (finding the district court lacked jurisdiction over the plaintiff's motion for a preliminary injunction because the issues presented in the motion were "entirely different from those which were alleged in his original complaint").

Majid also seeks injunctive relief regarding access to a law library computer which he alleges is necessary to file a response to the defendants' dispositive motion.  Such relief now

---

[4] The portions of Real Truth that were reissued by the Fourth Circuit are Parts I and II found at 575 F.3d at 345-47, which are the sections addressing injunctions that are relied upon in the court's Report and Recommendation.

[5] Based on Winter, the Real Truth Court expressly rejected and overruled Blackwelder's sliding scale approach, which allowed a plaintiff to obtain an injunction with a strong showing of a probability of success even if he demonstrated only a possibility of irreparable harm.  Real Truth, 575 F.3d at 347; Winter, 555 U.S. at 21-23.

appears to be moot, as Majid has filed extensive responses, supplemental attachments, and a sur-reply to the defendants' motion.

Finally, Majid seeks injunctive relief regarding his mental health treatment. Specifically, he seeks to be transferred to a mental health program at a different institution because he claims he is not receiving adequate mental health treatment while in the Restrictive Housing Unit at Broad River Correctional Institution. It is well-settled that a prisoner has no constitutional right to be housed in the facility of his choice, at a particular custody level, or in a particular portion or unit of a correctional institution. See Olim v. Wakineknoa, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976) (holding that the Constitution's Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); McKune v. Lile, 536 U.S. 24, 39 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"). Accordingly, for this reason and because Majid has failed to establish the four elements of Winter, Majid's motion for a preliminary injunction should be denied.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion to dismiss or, in the alternative, for summary judgment be granted (ECF No. 50) and Majid's motion for a preliminary injunction be denied (ECF No. 66). In light of the court's recommendation, Majid's motion seeking miscellaneous relief (ECF No. 49) should be terminated as moot.

_____

July 24, 2020  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).